SLOWMAN WYNN, plaintiff in error, *vs.* F. S. C. BRYCE, guardian, defendant in error.

1. This court will not reverse the judgment of the judge of the superior court in overruling the exception to an auditor's report, that the auditor disallowed a claim of the guardian for $72.00, expenses incurred in sending the ward out of this state and beyond the jurisdiction of its courts of ordinary and chancery, in order to prevent her marriage against the guardian's wishes, the exception being before the judge without a jury, by consent, and the evidence disclosing no valid objection to the man whom the ward wished to marry.

2. A creditor who fails to notify the executor of his debt against the testator until the legacies have been all paid and the estate settled up, can recover from a legatee who has received her legacy only her *pro rata* share of the debt, though the other legatees are without the state and the creditor is a Georgian, and the debt was contracted in Georgia; and if her guardian, who was the executor of the will, after he has divided the estate among all the legatees, and received and receipted for his ward's legacy as her guardian, shall pay the whole debt, he will be allowed only her *pro rata* share as a charge against the ward—there being no evidence as to the solvency or insolvency of the other legatees.

Guardian and ward. Legacies. Debtor and creditor. Before Judge BUCHANAN. Carroll Superior Court. April Term, 1877.

Reported in the opinion.

AUSTIN & HARRIS, by FERRELL & LONGLEY, for plaintiff in error.

C. W. MABRY, for defendant.

JACKSON, Judge.

Bryce was appointed guardian of his wife in place of Slowman Wynn, the former guardian, and cited the latter for settlement before the ordinary. From the judgment of the ordinary an appeal was taken to the superior court. The matters in dispute in the first guardian's account were referred to an auditor, who reported a certain sum due, and

to this report two exceptions were taken, which were referred to the judge without a jury, who decided against both and in favor of the auditor's report; and to the decision of the judge sustaining the report the defendant excepted, and the case is thus brought before us.

1. The first exception is to the refusal of the auditor to allow the guardian $72.00 expenses for sending his ward, under care of his son, to South Carolina to an aunt of hers. The reason given for so sending her out of the state was the fact that she wished to marry, at fifteen years of age, a man disapproved of by the guardian; but no grounds or reasons of opposing her marriage with *him* are given. We doubt the power of a guardian to send a ward, always under charge of the court of chancery, beyond its jurisdiction. At all events, we will not control the auditor and judge in refusing to allow the charge, unless other good reasons, above the whim and caprice of the guardian, or the age of the ward —fifteen—or the fact that there was no female in his home, were assigned for sending her out of the state. It seems, from a report of a branch of this controversy, when here before—50 *Ga.*, 332—that the present guardian and husband of the ward, was the contemplated husband objected to by the former guardian, and that the purpose of her removal to South Carolina was thwarted anyhow, and produced no fruit as desired by the guardian. It would seem wrong to make the ward pay for a trip out of the state to defeat a marriage which was at last consummated, and which has proved happy, so far as we know from this record.

2. The second exception is, that the auditor refused to allow a charge of the guardian of $100.00, which he paid to a creditor of the ward's father and testator, upon the following state of facts: testator died, leaving property in Georgia and South Carolina, two executors, one in each state, and four legatees, among whom his property was equally divided. Three of his children were in South Carolina and this ward in Georgia, and the estate was divided, under the will, equally between them. The Georgia executor and the

guardian of the Georgia minor were the same person—the present defendant—who turned over to himself, as guardian, the share of this ward. After this had been done, he took up the claim of a creditor of the testator on the estate for $100.00, evidenced by two promissory notes of $50.00 each, and charged his ward therewith. This creditor was a Georgia creditor, but gave no notice of his debt until the estate was distributed. The ordinary allowed the guardian this debt, which he paid out of the ward's estate, but the auditor and the judge cut it down to $25.00, which is her *pro rata* share. So that the question made is this: was the ward's share of her father's estate, which she had received from the executor by her guardian, liable for more than her *pro rata* share of the debt against her father, under the facts above stated? Could the creditor have compelled the guardian to pay the whole debt by filing a bill to subject this property, already distributed, to its payment, when his own laches in failing to present his claim, or give notice thereof, had caused the estate to be divided among the legatees? If equity would have compelled the guardian to do so, then he was right to pay the one hundred dollars, and ought to have credit therefor; but if equity would have made him only pay one fourth—her *pro rata*—out of his ward's share in his hands as guardian, then he is protected only to that extent.

Upon principle, it would seem that, as his own default prevented the whole Georgia estate of the testator from being liable for the debt, and his laches thus would have caused, if the whole debt were paid, this ward to pay four times as much as she would otherwise, that equity would only make her pay the same fourth—only her *pro rata* liability. And so the Code distinctly declares. Code, § 2467. The principle there declared is, that, "if the executor has assented to the legacies, and the legatees are in possession, after exhausting the assets in the hands of the executor, the creditor may proceed against *each legatee* for his *pro rata* share." Here the executor had turned over to the legatee,

or her guardian, the property, and it was in her possession. It is true that if the assets had not been turned over to the ward, but had remained in the hands of the executor, then they would have been liable, though the rest of the estate had been distributed to others, and all that remained would have belonged to one when turned over, as ruled in 26 *Ga.*, 550. But when it is turned over, the title passes, and the liability is only *pro rata.*

So in regard to administrators, the same rule prevails. Code, 2531. That declares : " If the estate has been distributed to the heirs at law without notice of an existing debt, the creditor may compel them to contribute *pro rata* to the payment of his debt." The only point really ruled in 20 *Ga.*, 145, is that a judgment against the administrator, subsequent to distribution, cannot reach property distributed, but it is said there that equity will compel *pro rata* contribution on a proper bill, and the insolvency of a part of the heirs would be considered in the contribution of those solvent ; that is, the solvent heirs would have to make up to the creditor not only their own *pro rata*, but that of those insolvent. But the latter remark was *obiter.* However, there is no insolvency shown here, and we rule nothing on that point. It is enough to say that, in this case, the laches of the creditor caused all the difficulty, and that he ought to have suffered rather than this ward ; and as this guardian assumed the responsibility of paying the creditor without suit, he must stand in his shoes ; having made himself judge, he judged at his peril, and has lost.

The judgment of the court below follows the Code in section 2467, in case of legacies assented to, and the right of creditors to follow them, and it must be affirmed.